UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

CIVIL ACTION NO. 09-265-KSF

TERESA SWAFFORD                                                 PLAINTIFF

v.                              **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner of Social Security              DEFENDANT

* * * * * *

The Plaintiff, Teresa Swafford, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for period of disability and disability insurance benefits. This Court, having reviewed the record, will affirm the Commissioner's decision, which this Court finds was made pursuant to proper legal standards and supported by substantial evidence.

I.        FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Teresa Swafford, filed her claim for disability insurance benefits on August 1, 2006, alleging disability beginning April 8, 2006 [TR 76-80]. Swafford's initial applications were denied on November 3, 2006 [TR 56-59] and denied upon reconsideration on November 30, 2006 [TR 63-65]. Swafford then appeared at a hearing before an Administrative Law Judge ("ALJ") on August 29, 2007 [TR 23-41]. The ALJ issued an unfavorable ruling (finding Swafford "not disabled") on December 5, 2007 [TR 12-22]. Swafford's request for review was denied on July 22, 2009 [TR 5]. This became the commissioner's final decision on August 12, 2009 when the Appeals Council denied Swafford's request for review a second time after receiving subsequent evidence [TR

1

1-3]. Swafford has exhausted her administrative remedies and filed a timely action in this Court. The case is now ripe for review pursuant to 24 U.S.C. § 405(g).

Teresa Swafford was born April 3, 1954 and was fifty-two years old at the time the ALJ rendered his decision. The ALJ noted that Swafford would qualify as "an individual closely approaching advanced age" [TR 21]. Swafford speaks English, earned a G.E.D., and had some additional training [TR 27]. Her past relevant work consists of medium to heavy, semi-skilled and unskilled work [TR 21]. Swafford claims she became unable to work on April 8, 2006, citing arthritis in her hands, feet, legs, and back; mitral valve prolapse; sleep apnea; and post-traumatic stress disorder [TR 76, 97].

In determining whether a Claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)-(e); *see also Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, summarized by the Court in *Walters*, are as follows:

(1) If Claimant is doing substantial gainful activity, she is not disabled.

(2) If Claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If Claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, Claimant is presumed disabled without further inquiry.

(4) If Claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if Claimant's impairment does prevent her from doing past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled. *Id*.

The burden of proof is on the Claimant through the first four steps of the process to prove Claimant's disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If the ALJ reaches the fifth step without finding that a Claimant is not disabled, then the burden shifts to the Commissioner to consider the Claimant's residual functional capacity, age, education, and past work experience to determine if she could consider other work. If not, Claimant would be deemed disabled. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ determined that Swafford met the insured status requirements of the Social Security Act through December 30, 2010 [TR 14]. The ALJ then undertook the five-step analysis of Swafford's claim. At Step One, the ALJ found that Swafford had not engaged in substantial gainful activity since April 8, 2006, the alleged onset date [TR 14]. The ALJ noted that while Swafford had performed some work and earned income after that date, it constituted an "unsuccessful work attempt" because of the minimal duration (three months) and the work ended because of Swafford's impairments, per 20 C.F.R. § 404.1574, based on Exhibit 3E at TR 106-109 [TR 14]. At Step Two of the analysis, the ALJ found that Swafford suffered a severe combination of impairments due to her arthritis and post-traumatic stress disorder [TR 14]. Her other conditions were therefore not determined to be severe; Swafford, however, does not contest this finding. At Step Three, the ALJ determined that Swafford does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments [TR 17-18].

Before considering Step 4 of the five-step process, the ALJ made a finding of Swafford's Residual Functional Capacity ("RFC") [TR 18]. The ALJ determined Swafford had the RFC to perform light work with a sit/stand option every forty-five minutes; could not climb ladders, ropes, or scaffolds; and only occasionally climb ramps or stairs. The ALJ found that Swafford would be

limited to low-stress jobs that required simple, one-or-two-step instructions; was seriously limited but not precluded in her ability to relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses. The ALJ found that Swafford had a limited but satisfactory ability to maintain attention and concentration [TR 18]. The ALJ determined at Step Four that this residual functional capacity would not allow Swafford to return to any past relevant work [TR 21]. Beyond this step of the analysis, the burden shifts to the Commissioner to show that jobs exist in the national economy in significant numbers which the Plaintiff could consider. 20 C.F.R. § 404.1520(g).

Transferability of jobs skills was determined to be immaterial to the analysis as the Medical-Vocational Guidelines, used as a framework, would support a finding that Swafford is "not disabled" regardless of whether Swafford had transferable job skills. However, given the existence (and severity) of the non-exertional limitations on the Plaintiff, the ALJ correctly determined that the Medical-Vocational Guidelines could not be used to direct a finding of "not disabled" [TR 21-22]. The ALJ therefore called a Vocational Expert ("VE"), Mr. William Ellis, to testify whether jobs exist in the national (and regional) economy in significant numbers for someone of Swafford's age, education, work experience, and RFC. [TR 22]. The VE testified that jobs exist regionally and nationally for an individual with Swafford's background and limitations. Examples given were mail clerk, nine hundred in the region and sixty-five thousand nationally; or packer, two-thousand seven hundred in the region and one-hundred-seventy-six thousand nationally; with the numbers given being reduced by ten percent to accommodate Swafford's limitations [TR 39]. Based on this testimony, the ALJ concluded at Step Five that Swafford is capable of successfully adjusting to other work available in significant numbers in the national (and regional) economy, and that therefore a

finding of "not disabled" would be appropriate [TR 22].

## II.  GENERAL STANDARD OF REVIEW

The power of the Federal District Court to review the decision of the Commissioner is limited to an examination of whether the decision supported by substantial evidence and was made pursuant to the correct legal standard. 42 U.S.C. § 405(g); *see Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1369 (6th Cir. 1991). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). The Court cannot conduct a review *de novo*, nor may it resolve conflicts in the evidence or make determinations of credibility. *See id*. If the Commissioner's decision was made according to the proper legal standard and supported by sufficient evidence, then this Court must affirm, *even if the evidence could support a different determination as well. Her v. Commissioner of Social Security*, 203 F.3d 388, 389-390 (6th Cir. 1999). The Court must, however, review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## III.  ANALYSIS

Swafford contends that the ALJ's unfavorable decision is not supported by substantial evidence. She argues that the hypothetical presented to the VE did not accurately portray her condition and failed to include significant restrictions, because Swafford alleges that the ALJ erroneously relied on the opinion of non-treating sources in forming his opinion (presumably, RFC

assessment) while improperly discounting the weight of the opinions of two examining sources. For the following reasons, this Court rejects Swafford's arguments and finds the Administrative Law Judge's decision was supported by substantial evidence and made according to the proper legal standards.

> A. **THE ALJ PROPERLY WEIGHED THE OPINIONS OF SWAFFORD'S EXAMINING AND NON-EXAMINING PHYSICIANS**

Swafford contends that the ALJ was in error to accept the opinions of the non-examining psychologists over the examining psychologists, partly on the basis of the "good reasons" rule and partly because of the nature of the examining versus non-examining relationship. Swafford is incorrect on both counts. An ALJ must give "good reasons" for the weight assigned to the medical opinion of a *treating* source if the ALJ does not give the treating source's opinion controlling weight. This requirement, however, does not apply to the medical opinions of any other source. *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007); *see also* 20 C.F.R. § 404.1527 (d).

Sufficient evidence exists for the ALJ to discount the weight of the examining physicians' opinions in regard to severity; examples given by the ALJ include an Employer's Questionnaire from one of Swafford's last employers before her alleged onset date, which reports that she only had difficulty dealing with schedule changes and unannounced absences; but otherwise responded well to other employees and supervisors [TR 143-145]. Other examples include inconsistencies in the psychological examinations and the final assessments; for instance, Dr. Hatfield observed that Swafford's social judgment seemed adequate albeit affected by her post-traumatic stress [TR 218-219], that she exhibited adequate ability to make daily decisions [TR 218], while Dr. Couch

observed in her examination that Swafford's profile suggested a "tendency to over-report psychological symptoms" [TR 289], and that Swafford "appears able to perform simple, repetitive tasks" [TR 293]. Couch's examination also found that Swafford should be capable of managing finances [TR 293] and is able to recall, understand, and execute basic instructions [TR 293]. This information provides substantial evidence to discount the weight of the examiners' opinions regarding the severity of Swafford's mental limitations.

As to the ALJ's acceptance of the opinions of the state agency psychologists, Dr. Demaree and Dr. Sillers, state agency medical or psychological consultants are considered experts in Social Security disability determinations. Their opinions are not binding on the ALJ, but are to be viewed as opinion evidence. 20 C.F.R. § 404.1527 (f)(2)(i). Plaintiff contends, based on *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994), that for the ALJ to accept the opinion of a non-examiner over that of an examiner, the non-examiner must have reviewed the entirety of the record and must articulate clear reasons why he or she disagrees with the examining source. *Barker* cannot be read to support this proposition. The Court in *Barker* listed several reasons, including that the expert had access to the entire record, why the ALJ had substantial evidence to accept the opinion of a medical expert who was present at the hearing over that of an examining source, but nowhere in its language made these factors mandatory criteria. The Court did not mention at all the proposition that the non-examining source must state distinct reasons for disagreeing with the examining source. *Barker*, 40 F.3d at 794-95.

Swafford further argues there is a presumption that a treating source will be given greater weight unless there is another treating source to rebut the presumption, and thus that Dr. Hatfield's examination should be given controlling weight. Her argument fails on several levels. First, the

7

Social Security Regulations and the applicable case law specifically discuss that the weight of a treating source's opinion may be discounted for inconsistency with substantial evidence in the record, being unsupported by acceptable clinical and laboratory techniques; they do not require another treating source to be present. 20 C.F.R. § 404.1527 (d)(2); *see also Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *see also Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 927 (6th Cir. 1987) ("Because there was substantial evidence to the contrary, the Secretary was not bound by the opinions of the treating physicians...."). Second, Swafford has confused an examining relationship with a treating relationship. The regulations provide that a *non*-treating source is a physician, psychologist, or other acceptable medical source who has examined the Claimant but does not have or did not have an ongoing treatment relationship with the Claimant. 20 C.F.R. § 404.1502. Dr. Hatfield is a psychologist to whom the Claimant was referred for examination purposes *by the state agency* [TR 15]. Dr. Hatfield refers to Swafford consistently throughout her report as "the Claimant," not as a patient, and performed the examination in order to determine the extent of the disabling nature of Swafford's mental conditions, not to provide therapeutic relief [TR 214-220]. Consequently, Dr. Hatfield's opinion was not entitled to greater weight as that of a treating source. 20 C.F.R. § 404.1527 (d).

Swafford also contends that the ALJ should have consulted a medical expert who had seen the entire record and commented on it, and that it was error to do otherwise. This Court disagrees. Determinations of a Claimant's RFC, the nature and extent of the Claimant's impairments, application of vocational factors, and whether a Claimant is disabled are ultimately the purview of the ALJ, and are not medical opinions, 20 C.F.R. § 404.1527(e)(1-3), though the ALJ must consider

and weigh the opinions, if any exist, of acceptable medical sources on these issues. S.S.R. 96-5p. Here, the ALJ considered and either discounted or adopted the opinions of all psychologists who provided assessments of Swafford, whether examining or non-examining, and weighed them against the record, fulfilling this requirement. Additionally, in this case, even though the state agency psychologists had no chance to review Dr. Couch's later examination, the ALJ clearly reviewed it and properly made a determination on its weight. *See Ealy v. Commissioner of Social Security*, 594 F.3d 504, 513 (6th Cir. 2010) (Even if non-examiner had not had access to later medical findings, ALJ discussed them and weighed their impact on the Claimant's condition). As previously discussed, the ALJ discounted the credibility of Dr. Couch's opinion and was supported by substantial evidence in doing so.

### B. THE ALJ'S HYPOTHETICALS TO THE VOCATIONAL EXPERT WERE ADEQUATE

Swafford alleges that the ALJ erred in failing to include Dr. Hatfield's and Dr. Couch's assessments of her psychological limitations in the hypotheticals proposed to the VE. However, the ALJ specifically discounted the weight given to those opinions, particularly regarding the nature and severity of the functional limitations placed on Swafford [TR 21].

The Court in *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), noted that in a situation where a psychologist whose opinion the ALJ has adopted has given a specific, express limitation on the Claimant's ability to perform in a work setting, that restriction must be included in the hypothetical. *Id.* at 516. In that case, the ALJ omitted the restriction, which was error. The Court also noted in *Ealy* that restrictions such as "simple" or "low stress" work do not adequately convey limitations on coping with work stress or maintaining concentration. *Id.* at 516-

9

517. Here, however, Dr. Demaree, one of the non-examining psychologists, gave no such express restriction [TR 231] (Dr. Sillers adopted Dr. Demaree's findings at TR 250). The ALJ's hypothetical did limit Swafford to low-stress work involving simple, one-or-two-step tasks, but included specific discussion of her ability to cope with work stresses and her ability to maintain concentration by stating that Swafford is "seriously limited but not precluded in her ability to relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses" and that Swafford has a "limited but satisfactory ability in maintaining attention and concentration" [TR 38-39], and thus explaining the need for "low stress" work and one-or-two-step tasks sufficiently for the VE to make an informed response in compliance with *Ealy*.

The ALJ's RFC incorporated all of the elements he found factually applicable to Swafford. The hypotheticals presented to the VE were virtually identical to the language of the RFC with differences only in severity of exertional level (e.g., the restrictions of the RFC but at medium instead of light) and without the sit/stand option every forty-five minutes; or the restrictions of the RFC with "seriously limited but not precluded ability to . . . maintain concentration" replacing "limited but satisfactory ability in maintaining attention and concentration"). The ALJ was not bound to include in these hypotheticals restrictions assessed by consulting psychologists whose opinions he had properly rejected.

**IV.    CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS:**

    (1)    the Plaintiff's motion for summary judgment [DE #10] is **DENIED**;

    (2)    the Commissioner's motion for summary judgment [DE #11] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four [4] of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(4) A judgment will be entered contemporaneously with this Opinion and Order.

This June 25, 2010.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge